IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

REX EAGON and DIANA EAGON,
individually and as co-administrators of the
ESTATE OF DARIEN M. EAGON,

                Plaintiffs,

v.                                      CIVIL ACTION NO.   3:23-0013

CABELL COUNTY EMERGENCY MEDICAL SERVICES,
UNIDENTIFIED CABELL COUNTY EMERGENCY MEDICAL SERVICES AGENT,
GORDON MERRY III, and
JOHN DOE NON-PARTY FAULT ENTITY IDENTIFIED BY CO-DEFENDANTS,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are three motions in limine filed by Defendant Cabell County Emergency Medical Services (CCEMS) related to the decedent Darien M. Eagon's lost wages. These motions are: (1) CCEMS's Motion in Limine to Exclude Plaintiffs' Expert, Dr. Clifford Hawley (ECF No. 126), (2) CCEMS's Motion in Limine to Exclude Decedent's Alleged Lost Wages (ECF No. 128), and (3) CCEMS's Motion in Limine to Exclude Evidence or Testimony about Documentation not Produced in Discovery. ECF No. 137. Plaintiffs Rex and Diana Eagon oppose all three motions. On June 5, 2025, the Court held a hearing on the motions. Upon consideration of the parties' arguments and for the following reasons, the Court **GRANTS** CCEMS's Motion in Limine to Exclude Evidence or Testimony about Documentation not Produced in Discovery; **DENIES, in part,** and **GRANTS, in part,** its Motion in Limine to Exclude Plaintiffs' Expert, Dr. Clifford Hawley; and **DENIES** its Motion in Limine to Exclude Decedent's Alleged Lost Wages.

The underlying facts of this case are set forth in detail in this Court's prior Memorandum Opinions and Orders. *See Eagon v. Cabell Cnty. Emergency Med. Servs.,* Civ. Act. No. 3:23-0013, 2025 WL 72166 (S.D. W. Va. Jan. 10, 2025); *Eagon v. Cabell Cnty. Emergency Med. Servs.*, Civ. Act. No. 3:23-0013, 2023 WL 8853727 (S.D. W. Va. Dec. 21, 2023). In essence, Plaintiffs Rex and Diana Eagon filed this lawsuit alleging that Defendants' acts and omissions resulted in their daughter Darien M. Eagon's suicide. As part of their claim, Plaintiffs seek their daughter's lost wages. To this end, they hired Clifford B. Hawley, Ph.D., to calculate the economic loss.

In his report, Dr. Hawley considered, inter alia, Mr. Eagon's deposition and Plaintiffs' Answers to Defendant CCEMS's First Set of Interrogatories and Request for Production of Documents. *Economic Losses of Darien Eagon* by Clifford B. Hawley, Ph.D., at 2 (May 23, 2024), ECF No. 126-1; *Rex Eagon Dep.*, ECF No. 126-2; *Pls.' Answers to Def. CCEMS's First Set of Interrog. and Reqs. for Produc. of Docs.*, ECF No. 126-3. During his deposition, Mr. Eagon stated that his daughter had worked part-time at the family business and, because she had proven herself by increasing the company's postcard sales by approximately 30%, they were putting her in charge of all the company's sales. *Rex. Eagon Dep.* 28:8-23; 29:1-14. Plaintiffs also asserted in their interrogatory response that, based upon their daughter's excellent sales record, she was projected "to earn approximately $60,000 in salary plus another $12,000 in health insurance benefits" in 2021. *Pls.' Answers to Def. CCEMS's First Set of Interrog. and Reqs. for Produc. of Docs.*, at 3. While Ms. Eagon's wages were significantly less the two previous years,[1] Plaintiffs

---

[1] In their Answers to Interrogatories, Plaintiffs stated that from October 2019 through the end of 2019, the company paid their daughter a total of $4,897.74 in commissions and health benefits and in 2020 she "received "$14,164 in commissions and $12,321.67 in health insurance

-2-

explained the large increase in her expected salary because "she was promoted to the full-time position of Manager of all sales (not just post cards)" just days before she committed suicide. *Id.*

Relying upon expected commissions in the amount of $60,000 in 2021, Dr. Hawley estimated Ms. Eagon's benefits would be $15,000 per year, for a total of $75,000. *Id*. Assuming Ms. Eagon worked until age 65, Dr. Hawley calculated the present value of Ms. Eagon's "lost earning capacity" at $1,264,271. *Id*. at 2-3. As an alternative, Dr. Hawley estimated Ms. Eagon's earnings would be $36,360 based upon "the average annual earnings of those in Sales and Related Occupations in the Huntington-Ashland, WV-KY-OH statistical area" with $9,090 in benefits. Under this scenario, reduced to present value, Dr. Hawley calculated Ms. Eagon's lost earning capacity at $766,148 if she had worked until age 65. *Id*. at 3. Additionally, he calculated the loss of her household services to be $803,497. *Id*. at 4.

On March 24, 2025, CCEMS filed its motions to exclude Dr. Hawley from testifying at trial and to exclude evidence of Ms. Eagon's lost wages. In support of its motion to exclude Dr. Hawley, CCEMS argues his testimony is not sufficiently tied to the facts of the case and will not be helpful in determining Ms. Eagon's future lost wages. Specifically, CCEMS asserts that Plaintiffs did not produce any records or documents substantiating Ms. Eagon's wages and benefits either at her family's company or for any other employment she previously held. Moreover, CCEMS contends that Dr. Hawley's assumptions contradict the actual facts. In their second motion, CCEMS argues any evidence of lost wages should be excluded pursuant to Rule 26(a) of the Federal Rules of Civil Procedure because Plaintiffs did not provide "a computation of

---

benefits for a total of $26,486.32." *Id*.

each category of damages claimed[.]" Fed. R. Civ. P. 26(a). As Plaintiffs did not provide any documentation in support of the wage claim, CCEMS insists Plaintiffs should be prohibited from offering, eliciting, commenting, or referring to any lost wages. CCEMS argues that to do otherwise would be speculative, misleading, irrelevant, and unfairly prejudicial.

When Plaintiffs filed their Responses to these motions, they contemporaneously emailed CCEMS copies of Ms. Eagon's W-2s, a spreadsheet with her health insurance information, and a business tax return, which they claim are "embodied in" Answers to CCEMS's Interrogatories. *Pls.' Omnibus Resp. to Def. CCEMS's Motions in limine to Exclude all of Pls.' Experts*, at 12, ECF No. 133. Having just received these documents for the first time, CCEMS then filed an additional motion to exclude this evidence under Rule 26 as it was not produced until after the close of discovery.

Addressing this last motion first, the Court agrees with CCEMS. In its short Response, Plaintiffs assert they provided these documents to CCEMS as they match Mr. Eagon's prior deposition testimony and their answers to interrogatories. Thus, Plaintiffs contend that CCEMS should not be surprised by the information and, if CCEMS wanted more information about how Dr. Hawley reached his conclusions, they should have deposed him and consulted with Plaintiffs about the underlying documentation.

However, the Court finds Plaintiffs' arguments do not address their responsibility to comply with Rule 26. Pursuant to Rule 26(a)(1)(A), Plaintiffs

> must, without awaiting a discovery request, provide to the other parties: . . . a computation of each category of damages claimed by

> the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii). Additionally, Rule 26(a)(3) required Plaintiffs to identify in its pretrial disclosures "an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises." Fed. R. Civ. P. 26(a)(3)(iii).

Here, Plaintiffs did not provide CCEMS copies of Ms. Eagon's W-2s, the health insurance spreadsheet, or the family's business tax return until long after discovery closed and Plaintiffs were faced with CCEMS's motions in limine. Although Plaintiffs assert the information is "embodied" in their interrogatory response and CCEMS did not specifically request the documents, CCEMS, in fact, did generally request the production of "any and all documents or tangible things identified by the Plaintiffs in response to the . . . interrogatories," which included Plaintiffs' interrogatory response to Ms. Eagon's employment, commissions, and benefits. *Pls.' Resp. to CCEMS's Reqs. for Prod. of Docs.*, at 9, ECF No. 126-3; *Pls.' Answers to Def. CCEMS's First Set of Interrog. and Reqs. for Prod. of Docs.*, at 3; *see also* Fed. R. Civ. P. 34(b)(2)(A) (providing, in part, "[t]he party to whom the request [for a production of documents] is directed must respond in writing within 30 days after being served"). Moreover, in any event, the Rule also required those documents to be timely provided "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(A)(iii). Nevertheless, Plaintiffs did not provide those documents to CCEMS until April 7, 2025, and Dr. Hawley did not include these documents in the list of the ones he reviewed in preparing his report.

As Plaintiffs did not comply with Rule 26, the Court must now determine the appropriate remedy. When information is not provided as required by Rule 26(a) or (e), Rule 37 of the Federal Rules of Civil Procedure provides that "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Evid. 37(c)(1), in part. This Court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis[.]" *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). This discretion is guided by five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id*. Factors one through four "relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Bresler v. Wilmington Tr. Co*., 855 F.3d 178, 190 (4th Cir. 2017) (citation omitted). It is the non-disclosing party's burden to establish these factors. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

In response to CCEMS's motion, Plaintiffs simply argue that the documents should not be a surprise in light of Mr. Eagon's deposition testimony and their interrogatory response. Additionally, they place blame on CCEMS for not deposing Dr. Hawley, not having their own economic expert do an analysis, and not consulting with Plaintiffs before filing their motions. However, the Court finds these arguments are insufficient for Plaintiffs to meet their burden.

Guided by the above factors, the Court finds that the documentary evidence Plaintiffs submitted in support of lost wages and benefits obviously is significant for trial purposes. If permitted to be offered by Plaintiffs, it clearly would impact CCEMS's trial strategy and calculation of its risks. Prior to these documents being provided, Plaintiffs rested their economic damages on their daughter being given an oral promotion within ten days of her death and Plaintiffs' representation that it would increase her commissions and health insurance benefits from $26,486.32 in 2020 to $72,000 in 2021. Clearly, CCEMS believed Plaintiffs' estimation about what she might earn in 2021 was assailable and moved to exclude such evidence and Dr. Hawley's testimony. After CCEMS filed its related motions in limine, Plaintiffs then decided to give CCEMS copies of Ms. Eagon's W-2s, a spreadsheet of benefits, and a business tax return. Importantly, this late disclosure gave CCEMS no opportunity to analyze or challenge the documentary evidence prior to the discovery deadline, and the Court finds reopening discovery on this issue is not a viable option because, in all likelihood, it will disrupt the trial date which is less than one month away.

Additionally, although CCEMS never filed a motion to compel the production of these documents, Plaintiffs should have realized their importance if they intended to use them. It should have been obvious that CCEMS would likely hotly contest evidence of future lost wages based upon Ms. Eagon's work history, struggles with alcohol, and difficulties with her family. As this Court stated in its earlier decision, Mr. Eagon told a police officer who responded to the scene that his wife "had terminated their daughter's employment many times from a company they owned due to her drinking." *Eagon*, 2025 WL 72166, at *5. Mr. Eagon also stated during his deposition that his daughter previously was fired years earlier from a magazine

distribution company. *Rex Eagon Dep.*, 27:21-24. Thus, it should have been apparent that evidence corroborating Mr. Eagon's deposition and Plaintiffs' interrogatory response claiming their daughter was an excellent employee and earned a big promotion just days before her death would be important in establishing their damage claim. Nevertheless, it was not timely provided, and Plaintiffs have offered no legitimate explanation as to why it was not done. Given these circumstances, the Court **FINDS** Plaintiffs' late disclosure was neither substantially justified nor harmless. and **GRANTS** CCEMS's Motion in Limine to Exclude Evidence or Testimony about the wage and benefit documentation produced on April 7, 2025, and prohibits Plaintiffs from introducing these documents at trial.

The Court next turns to CCEMS's motion to exclude evidence of future lost wages all together and its motion to exclude Dr. Hawley's report and testimony regarding his calculation as to Ms. Eagon's lost wages and household services. Pursuant to Rule 702 of the Federal Rules of Evidence,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Implicit in the text of Rule 702 . . . is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (emphasis added in *Nease*)). To conduct this gatekeeping function, a court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In assessing the reliability of expert testimony, "the district court must ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (emphasis added in *Nease*)). *Daubert* offers a non-exhaustive list of guideposts to assist a district court in determining "if expert testimony is sufficiently reliable to be admissible." *Id.*[2]

---

[2] These guideposts include:

> First, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." A second question to be considered by a district court is "whether the theory or technique has been subjected to peer review and publication." Publication regarding the theory bears upon peer review; "[t]he fact of publication (or lack thereof) in a peer reviewed journal will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." Third, "in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error." Fourth, . . . "'general acceptance'" is nonetheless relevant to the reliability inquiry. "Widespread acceptance can be an important factor in ruling particular evidence admissible, and a known technique which has been able to attract only minimal support with the community may properly be viewed with skepticism." (citation and internal quotation marks omitted).

The party offering the expert opinion has the burden of establishing its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citation omitted).

Applying Rule 702 and the *Daubert* standard, the Court first considers Dr. Hawley's estimate of Ms. Eagon's lost earning capacity of $1,264,271. In his report, Dr. Hawley states this estimate is based upon Mr. Eagon's expectation "that her earnings would be about $60,000 in 2021."[3] CCEMS argues Plaintiffs' beliefs about what their daughter would have earned following her promotion is speculative and unreliable, and they failed to provide a computation of those damages under Rule 26. Therefore, CCEMS insists both Mr. Eagon's testimony and Dr. Hawley's calculation based on that information should be excluded. The Court disagrees.

As the owner of the family business, Mr. Eagon stated in his deposition that his daughter was paid on commission and had handled the company's postcard sales, which was just one of the company's products. *Rex Eagon Dep.* 28:8-23. Given her success with postcard sales, Plaintiffs assert they promoted her to handle all the products the company sold. *Id*. 29:1-9; *Pls.' Answers to Def. CCEMS's First Set of Interrog. and Reqs. for Produc. of Docs.*, at 3. In their interrogatory response, Plaintiffs more precisely explained that their daughter "grew the family business's post card sales by 33%," which far exceeded the industry standards. *Id*. Plaintiffs further indicated their daughter was promoted just days before her death "to the full-time position of

---

*Id*. (quoting *Daubert*, 509 U.S. at 593).

[3]*Economic Losses of Darien Eagon, Report by Clifford B. Hawley, Ph.D.*, at 2.

Manager of all sales" and "based on her 10% commission, she would have been set in 2021 to earn approximately $60,000 in salary plus another $12,000 in health benefits." *Id.*

Although CCEMS challenges this evidence, the Court cannot say it should be excluded under Rule 26 for failing to substantiate it with documentation or for being speculative or unfairly prejudicial. Ms. Eagon was an employee of a family-run business. Mr. Eagon, as owner of the company, gave sworn deposition testimony that he was putting his daughter in charge of all the company's sales because she had proved herself by increasing the company's postcard sales. In their interrogatory response, Plaintiffs computed her wages as 10% of the company's total sales for a total of $60,000. While Plaintiffs did not timely provide the documentation to corroborate this evidence, Mr. Eagon, as Ms. Eagon's employer, nevertheless is qualified to say what his company would have paid her by computing 10% of the company's total sales. Given the admissibility of this evidence, the Court finds no reason why Dr. Hawley also cannot rely upon what the owner of a company asserts an employee would make to calculate what Ms. Eagon's lost earnings would be until age 65. Certainly, CCEMS may attempt to impeach Mr. Eagon and challenge his computation, but whether Mr. Eagon ultimately is believable is for the jury, not the Court, to decide. Therefore, the Court **DENIES** CCEMS's Motion in Limine to Exclude Decedent's Alleged Lost Wages and CCEMS's Motion in Limine to Exclude Plaintiffs' Expert, Dr. Clifford Hawley, to the extent he bases his calculation upon Ms. Eagon's projected commissions of $60,000.

As to Dr. Hawley's lower estimate, Plaintiffs argue such evidence is admissible as it is based upon "the average annual earnings of those in Sales and Related Occupations in the

Huntington-Ashland, WV-KY-OH statistical area (U.S. Bureau of Labor Statistics, *May 2023 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates*)." *Economic Losses of Darien Eagon, Report by Clifford B. Hawley, Ph.D.*, at 3. On the other hand, CCEMS points out that this estimate does not consider any specific information about Ms. Eagon, such as her level of education or sex. Thus, CCEMS insists it is insufficiently reliable and tied to the facts of this case. The Court agrees with CCEMS. Merely quoting what the average sales person in this area earns without any consideration of the type of sales work Ms. Eagon was doing, her education, or sex is not an estimate based upon a reliable application by Dr. Hawley to the facts of this case. Therefore, the Court finds Dr. Hawley's calculation and testimony in this regard does not meet the Rule 702 and *Daubert* standards and **GRANTS** CCEMS's motion to exclude evidence based upon Dr. Hawley's calculations based on average earnings in the area.

Lastly, Dr. Hawley opines that the loss of household services is $803,497. Although CCEMS broadly argues in its motion that Dr. Hawley's testimony should be entirely excluded, it makes no specific arguments as to why his opinion regarding Ms. Eagon's loss of household services is inadmissible. Therefore, the Court **DENIES WITHOUT PREJUDICE** the motion to exclude this evidence.

Accordingly, having considered the arguments of the parties, the Court **GRANTS** CCEMS's Motion in Limine to Exclude Evidence or Testimony about Documentation not Produced in Discovery (ECF No. 137); **DENIES** its Motion in Limine to Exclude Decedent's Alleged Lost Wages (ECF No. 128); and **DENIES** CCEMS's Motion in Limine to Exclude Plaintiffs' Expert, Dr. Clifford Hawley with respect to his calculation based upon Plaintiffs'

assertion Ms. Eagon would have made $60,000 a year in commissions, **DENIES WITHOUT PREJUDICE** the motion with regard to Dr. Hawley's calculation of household services, and **GRANTS** the motion as to Dr. Hawley's calculations based upon the wages of an average sales person in the area. ECF No. 126.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record, and any unrepresented parties.

ENTER:	June 10, 2025

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE